# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE SCALIA, *Secretary of Labor, United States Department of Labor*, | No. 4:18-CV-01642 |
| Plaintiff, | (Judge Brann) |
| v. | |
| SHALIMAR DISTRIBUTORS LLC d/b/a PROMISED LAND TRUCK STOP, TAFS CORP. d/b/a WHISTLE STOP, and MOHAMMAD TAHIR, *individually and as owner and manager of the aforementioned corporations*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JULY 28, 2020

This case is brought by the Secretary of Labor for the United States Department of Labor against Defendants Shalimar Distributors LLC ("Promised Land"), TAFS Corporation ("Whistle Stop"), and their owner and manager Mohammad Tahir asserting violations of the Fair Labor Standards Act of 1938[1] (the "FLSA"). Specifically, the Secretary claims that Defendants violated the minimum wage, overtime, and recordkeeping provisions of the FLSA between April 11, 2015 and December 17, 2019 (the "relevant time period"). The Secretary

---

[1]   29 U.S.C. § 201 *et seq.*

now moves for summary judgment on nine issues relating to those violations. For the reasons that follow, the motion will be granted.

## I.   BACKGROUND

Defendant Mohammad Tahir owns and operates Promised Land and Whistle Stop.[2] Promised Land is a gas station and convenience store located in Tafton, Pennsylvania; Whistle Stop, located in Greentown, Pennsylvania, similarly is a gas station and convenience store and additionally has a Subway sandwich shop.

In 2015, the Wage and Hour Division of the Department Labor investigated for alleged violations of the FLSA at Promised Land, including Defendants' practice of deducting employees' wages to cover cash register shortages and inadequate recordkeeping.[3] No lawsuit was filed at that time, but the Wage and Hour investigators advised Tahir of his responsibilities to comply with the minimum wage, overtime, and recordkeeping provisions of the FLSA.[4]

The Secretary filed the complaint in this action on August 20, 2018.[5] On March 16, 2020, the Secretary moved for summary judgment.[6] That motion is now ripe for disposition.

---

[2]   Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 11, Doc. 33-3 ("SOF").
[3]   *Id.* at ¶¶ 65, 68–69.
[4]   *Id.* at ¶ 70.
[5]   Compl., Doc. 1.
[6]   Pl.'s Mot. for Summ. J., Doc. 33.

## II.    LEGAL STANDARD

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Materiality of facts is determined by reference to the substantive law.[8] A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[9] All reasonable inferences must be drawn in the non-moving party's favor.[10]

## III.   DISCUSSION

The Secretary seeks summary judgment against Defendants on the following nine issues relating to conduct during the relevant time period: (1) Defendant Tahir is an "employer" as defined by FLSA § 3(d); (2) Defendants Promised Land and Whistle Stop are a covered enterprise under the FLSA; (3) Defendants violated FLSA § 11 by failing to maintain adequate timesheet and payroll records; (4) Defendants violated FLSA § 6 by failing to compensate Promised Land employees for time spent counting the cash register drawer or preparing end-of-shift reports for fuel and lottery sales; (5) Defendants violated FLSA § 6 by deducting from Promised Land employees' wages; (6) Defendants violated FLSA § 7 by failing to pay employees an overtime premium for all hours worked over

---

[7]  Fed. R. Civ. P. 56(a); *see also Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

[8]  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9]  *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (quotation marks omitted).

[10] *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

forty in a work week; (7) Defendants' failure to comply with the FLSA was willful; (8) Defendants are liable for liquidated damages in an amount equal to the back wage liability for minimum wage and overtime violations; and (9) the Secretary is entitled to injunctive relief.

### A.    Tahir is an employer.

The FLSA allows for individual employer liability against a corporate officer with operational control over employees.[11] Tahir concedes that he is an employer under the FLSA's definition.[12]

This conclusion is also supported by the evidence in the record. For example, Tahir owned 50 percent of both Promised Land and Whistle Stop, he was actively involved in the day-to-day operations of both businesses, he had the ability to hire and fire employees, and he was responsible for all payroll policies.[13]

Therefore, I grant summary judgment to the Secretary on this question.

### B.    Promised Land and Whistle Stop are a covered enterprise under the FLSA.

The FLSA's overtime provisions apply to enterprises engaged in commerce.[14] Here, too, Defendants concede that Promised Land and Whistle Stop are a covered enterprise.[15] The facts in the record establish that Defendants'

---

[11] *See Burroughs v. MGC Servs., Inc.*, No. 08-1671, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009).

[12] Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J. 6, Doc. 45 ("BIO").

[13] *See* SOF at ¶¶ 12, 14, 17–18.

[14] 29 U.S.C. § 207(a)(1).

[15] BIO at 6.

business activities are related and performed through unified operations or common control for a common business purpose, that their employees engaged in commerce during the relevant period, and that Promised Land and Whistle Stop had an annual gross volume of sales made of at least $500,000.00.[16] I therefore grant summary judgment to the Secretary on this question as well.

### C. Defendants violated FLSA § 11 by failing to maintain adequate timesheet and payroll records.

FLSA § 11(c) requires employers to maintain accurate and complete records.[17] The employer bears the burden of keeping accurate wage and time records.[18] These records must include hours worked per day and week, the amount paid to each employee per week, the daily starting and stopping times of each employee, and any deductions made from the wages paid.[19]

Defendants concede that Promised Land discarded time cards before November 2017.[20] Defendants also admitted in their answers to interrogatories that they made cash payments to employees that were not reflected in their records.[21] The records do not include all of the hours worked by Defendants' employees,

---

[16] SOF at ¶¶ 5–9.

[17] *See* 29 U.S.C. § 211(c); *see also Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984).

[18] *See Tri-County Growers*, 747 F.2d at 127–28.

[19] 29 C.F.R. §§ 516.2(a)(7)–(8), 516.6(a)(1), 516.2(a)(10); *Tri-County Growers*, 747 F.2d at 127.

[20] BIO at 6–7.

[21] SOF at ¶ 56; Defs.' Second Am. Answers to Pl.'s First Set of Interrogs. ¶ 15 ("There were some employees who were paid cash but there was no record made of the amounts and dates."); *Kenexa Brassring Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 746–48 (D. Del. 2010) (finding that a party's interrogatory responses constituted binding admissions).

including hours spent counting the cash register drawer or preparing end-of-shift reports for fuel and lottery sales.[22] They do not include deductions made from employees' pay.[23] They do not reflect all of the hours that Promised Land was open each week.[24] And they do not combine the hours worked by employees at both Promised Land and Whistle Stop.[25]

For these reasons, the Secretary has established that Defendants failed to keep accurate records as required by FLSA § 11(c), and I grant summary judgment on this issue.

### D. Defendants violated FLSA § 6 by failing to compensate Promised Land employees for time spent counting the cash register drawer or preparing end-of-shift reports for fuel and lottery sales and for deducting from employees' wages.

Section 6 of the FLSA requires employers to pay employees a minimum wage of $7.25 per hour worked.[26] The Secretary moves for summary judgment on the issue that Defendants violated § 6 by failing to pay Promised Land employees for time spent counting the cash register drawer and preparing end-of-shift reports for fuel and lottery sales and by deducting from employees' compensation to cover cash register, lottery, and fuel shortages.

---

[22] SOF at ¶¶ 52–53.

[23] *Id.* at ¶ 57.

[24] *Id.* at ¶¶ 58–59.

[25] *Id.* at ¶ 63. Defendants' argument that the hours should not be combined is considered and rejected *infra* at 9–10.

[26] 29 U.S.C. § 206(a); 29 C.F.R. § 778.108.

The Secretary cites employee declarations to support its motion.[27] In response, Defendants refer only to Tahir's deposition, in which he denied that he failed to pay employees for the time spent counting the cash register drawer and preparing end-of-shift reports and further denied deducting from employees' pay.[28] However, self-serving deposition testimony is not sufficient to create a jury question.[29] As discussed in the previous section of this Memorandum Opinion, Defendants failed to maintain adequate records that could be used to rebut the Secretary's claim, nor have they attempted to use them in defense. In the face of the evidence presented by the Secretary, I find that a reasonable jury could not find for the Defendants, and I grant summary judgment on these questions.

### E. Defendants violated FLSA § 7 by failing to pay employees an overtime premium for all hours worked over forty in a work week.

The Secretary moves for summary judgment as to whether Defendants violated the overtime provisions of the FLSA. FLSA § 7 requires that employers compensate employees at least time-and-a-half for hours worked in excess of forty

---

[27] SOF at ¶¶ 38–40.

[28] Tahir Dep. 168:4–18, 170:18–25, 192:14–16, Doc. 33-11.

[29] *See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) ("'As a general proposition, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."' This rule has been extended to self-serving deposition testimony." (quoting *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012))); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 516 n.3 (M.D. Pa. 2019) ("[T]his Court is not 'required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question.'").

in a week.[30] Defendants do not contest that some employees worked overtime.[31] Instead, they contend that these employees were properly compensated.

As discussed earlier, Defendants' timesheet and payroll records are deficient to rebut the employee declarations presented by the Secretary.[32] However, overtime violations appear even on the face of these records. The records contain examples of employees being paid straight time for overtime hours.[33] Elsewhere, some employees were paid on a "salary" basis when they worked overtime hours but were paid on an hourly basis when they did not.[34] From the evidence in the record, it is clear that Defendants failed to pay overtime for overtime hours worked.

Defendants next contend that some employees were exempt from overtime requirements because they were managers or assistant managers.[35] To qualify for this exemption, Defendants bear the burden of proving that the employees for whom they are claiming the exemption were in fact paid on a salary basis and performed the managerial duties that would qualify them for the exemption.[36]

Defendants have not met this burden. First, the employees were not always paid on a salary basis according to Defendants' own records, instead fluctuating

---

[30] 29 U.S.C. § 207(a)(1).
[31] Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶¶ 41–42, Doc. 47.
[32] SOF at ¶¶ 41–48.
[33] *Id.* at ¶ 46.
[34] *Id.* at ¶ 45.
[35] *See* 29 C.F.R. §§ 541.100, 541.102.
[36] *See Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 183 (3d Cir. 1988).

between hourly and salary compensation.[37] Second, there is no indication that these employees performed managerial tasks, such as managing employees, hiring or firing employees, or enforcing company policies.[38] To the contrary, they appear to have had the same responsibilities as the cashiers.[39] The managerial exemption does not apply here.

Defendants next argue that employees' hours worked at Promised Land and Whistle Stop should not be combined for overtime calculations. Hours should be combined for hours worked for joint employers. Joint employment exists "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, or is under common control with another employer."[40] The United States Court of Appeals for the Third Circuit in *In re Enterprise Rent-a-Car Wage and Hour Employment Practices Litigation* stated that significant control is sufficient to establish joint employment.[41] Factors to consider in examining a potential joint employment relationship include, but are not limited to, authority to hire and fire employees, authority to promulgate work rules and assignments and

---

[37] SOF at ¶ 45; Doc. 40-1 77, 80, 86, 89, 92 (Troy Dock).

[38] *See* 29 C.F.R. § 541.700(a).

[39] *See* Decl. of Michelle Simon ¶ 3, Doc. 33-15; Decl. of Troy Dock ¶ 2, Doc. 33-16.

[40] 29 C.F.R. § 791.2(b).

[41] *See In re Enter. Rent-a-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012).

set conditions of employment, day-to-day supervision, and control of employee records.[42]

Under the *Enterprise* test, Promised Land and Whistle Stop were joint employers. Tahir hired and fired employees from both businesses, oversaw daily activities and responsibilities at both, and was responsible for maintaining the employment records of both.[43] I find that Promised Land and Whistle Stop were not "completely disassociated," and thus that employees' hours must be aggregated for overtime purposes.

For these reasons, I grant summary judgment on the issue that Defendants violated FLSA § 7 by failing to pay required overtime compensation.

### F.     Defendants' failure to comply with the FLSA was willful.

The Secretary moves for summary judgment on the question that Defendants' FLSA violations were willful. Willful violations of the FLSA extend the statute of limitations an additional year.[44] A violation is willful if the employer knew that its conduct was prohibited by the FLSA or showed reckless disregard for the legality of its conduct.[45]

Defendants' violations exhibited at minimum reckless disregard toward compliance with the FLSA. Tahir had previously, in 2015, been investigated by the

---

[42] *Id.* at 469.
[43] Defs.' Responses to Pl.'s First Requests for Admission ¶¶ 14–20, Doc. 33-8.
[44] 29 U.S.C. § 255(a).
[45] *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Wage and Hour Division for potential FLSA violations.[46] At that time, the Wage and Hour Division investigators advised Tahir of his minimum wage, overtime, and recordkeeping obligations under the FLSA and that his practices at the time were not compliant.[47] Despite being made aware of these obligations, Tahir continued to discard timesheets, otherwise keep inaccurate records, and failed to pay required minimum wage and overtime. Defendants were on notice of their FLSA obligations and failed to either comply or make a good-faith effort to investigate the legality of these practices.[48] Therefore, I grant summary judgment to the Secretary on this question.

### G.  Damages calculation.

The Secretary seeks summary judgment as to the amount of Defendants' liability, consisting of $59,690.57 in back wages from April 11, 2015 through December 17, 2019, and an equal amount in liquidated damages. In cases where the "fact of damages" has been determined,[49] and the employer failed to keep employment records as required by the FLSA such that aggrieved employees relying on those inadequate or nonexistent records would "have no way to establish the time spent doing uncompensated work,"[50] courts apply a burden-shifting analysis to apportion damages that was first introduced by the United

---

[46] SOF at ¶ 65.

[47] SOF at ¶¶ 67–70.

[48] *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991); *Garcia v. Tenafly Gourmet Farms, Inc.*, Civ. A. No. 11-6828, 2012 WL 715316, at *2 (D.N.J. 2012).

[49] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

[50] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).

States Supreme Court in *Anderson v. Mt. Clemens Pottery Company*.[51] This framework imposes a minimal initial burden on the Secretary and then requires "precise" evidence from employers in rebuttal to avoid allowing employers to escape their obligations through inadequate recordkeeping.[52]

First, the Secretary must present a prima facie case.[53] This requires only evidence sufficient to support a "just and reasonable inference" of the amount and extent of un- or undercompensated work performed, which can be satisfied through representative testimony or evidence.[54]

If the Secretary succeeds in establishing a prima facie case, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate."[55]

In support of the prima facie case, the Secretary relies on the existing payroll records and employee declarations.[56] The Secretary draws from these to conclude that, on average, Defendants did not pay Promised Land employees for 0.5 hours per week for time spent counting the cash register drawer and preparing end-of-

---

[51] 328 U.S. 680 (1946).
[52] *See Selker Bros.*, 949 F.2d at 1298.
[53] *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702 (3d Cir. 1994).
[54] *Selker Bros.*, 949 F.2d at 1297.
[55] *Id.*
[56] SOF at ¶¶ 71–99.

shift reports for fuel and lottery sales and improperly deducted $20.00 per work

week.[57]

> The calculations then work as explained in the Secretary's brief:

> Available records and employee declarations revealed Defendants had
> a practice of paying a portion of hours worked on payroll and the
> remainder in cash. SOF ¶ 43, 56. Since Promised Land is open 24
> hours a day, it is reasonable to conclude employees worked, in the
> aggregate, 168 hours per week. SOF ¶ 74. Subtracting the total
> number of hours worked on the payroll from 168 hours indicates the
> number of missing hours on the payroll. SOF ¶ 75. Gross pay is
> determined by multiplying those hours by the employees' hourly rates
> listed on the payroll, and subtracting the $20.00 per week deduction.
> SOF ¶¶ 76, 77. Adding the average of .5 hours per week of
> uncompensated time to the reconstructed hours worked results in total
> hours worked. SOF ¶ 78. The regular rate with the deduction taken
> was determined by dividing the amount paid by the total hours
> worked. SOF ¶ 79. In non-overtime workweeks, the employee was
> due the difference between the subminimum wage rate paid and $7.25
> per [hour] for all hours worked. SOF ¶ 80.[58]

The Secretary then calculates damages for the overtime violations at Promised

Land as follows:

> [B]ased on available records and employee interviews, it is reasonable
> to conclude employees were paid straight time for overtime hours
> worked, with the exception of the uncompensated .5 hours. SOF ¶ 85.
> In overtime workweeks, the total hours worked are multiplied by the
> rate listed on the payroll. SOF ¶ 86. The straight-time assumed to have
> been paid between payroll and cash payments is then deducted from
> the total straight-time due. SOF ¶ 87. [One-half the] hourly rate on the
> payroll records is multiplied by the hours over 40 worked in the
> workweek to determine the total half time due. SOF ¶ 88. Because
> overtime violations also resulted from the employer's failure to
> combine hours worked between the establishments for the purposes of
> overtime pay, SOF ¶ 89, the hours worked at both locations should be

---

[57] *Id.* at ¶¶ 71–72.
[58] Mem. in Supp. of Pl.'s Mot. for Summ. J. 21, Doc. 38.

totaled, and half-time the hourly rate computed for hours in excess of
40 in a workweek. SOF ¶ 90.[59]

Finally, the Secretary calculates the damages from overtime violations at Whistle

Stop as follows:

> As to the overtime violations at Whistle Stop, there were two different
> violative practices that must be accounted for in the computations.
> SOF ¶¶ 93–96. When timesheets show an employee worked more
> than 40 hours in a workweek and payroll records showed Defendants
> paid straight time for overtime, additional half time is due. SOF ¶ 94.
> In instances where timesheets show an employee worked more than
> 40 hours in a workweek but payroll records showed that Defendants
> only paid employees for only 40 hours, time and one-half the
> employees' regular rate is due for the hours worked over 40 in the
> workweek. *Id.* For employees' managers and assistant managers,
> dividing the salary paid by 40 hours reveals their regular rate. SOF
> ¶ 95. The overtime due is determined by multiplying time and one-
> half the computed regular rate by the hours worked over 40 in the
> workweek. SOF ¶ 96.[60]

Based on these calculations, the Secretary argues that Defendants owe the sixty-

five employees a total of $59,690.57 in back wages from April 11, 2015 to

December 17, 2019. While Defendants maintain that no violations occurred, they

do not state any objection or opposition to the Secretary's calculations. I find that

the Secretary has met his prima facie burden.

The burden then shifts to Defendants to present evidence of the precise

amount of hours worked. However, Defendants identify no such evidence, instead

flatly denying that any violations took place. That argument has already been

rejected. Nor do Defendants identify any alternative calculation methods, let alone

---

[59] *Id.* at 21–22.

[60] *Id.* at 22–23.

"reasonable alternatives," to the Secretary's proposal.[61] I find that Defendants have not satisfied their burden, and I therefore grant summary judgment to the Secretary on his damages calculation.[62]

### H. Defendants are liable for liquidated damages.

In addition to the $59,690.57 in back wages, the Secretary seeks an award of liquidated damages in an equal amount. FLSA § 16(b) provides that any employer who violates §§ 6 or 7 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount as liquidated damages."[63] "Double damages are the norm, single damages the exception."[64] To establish that single damages are appropriate, the employer bears the burden of establishing good faith and reasonable grounds for the violation.[65] "In the absence of such proof[,] a district Court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages."[66]

Defendants have not presented any evidence that they acted in good faith or had reasonable grounds for their violations. Defendants were made aware of their

---

[61] *See Acosta v. Central Laundry, Inc.*, Civ. A. No. 18-190, 2019 WL 3413514, at *14 (E.D. Pa. July 29, 2019).

[62] The Secretary further requests damages through the date of compliance. However, I grant summary judgment only for the period of time defined as the "relevant period" from April 11, 2015 through December 17, 2019.

[63] 29 U.S.C. § 216(b).

[64] *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986).

[65] *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991).

[66] *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971); *see also Tri-County Growers*, 747 F.2d at 129.

obligations under the FLSA by the Wage and Hour Division's investigation in 2015. After that time, Defendants continued to violate the FLSA and did not seek guidance or counsel on the legality of their practices. Defendants did not take adequate steps to ensure compliance with the FLSA.

Therefore, I grant summary judgment to the Secretary as to whether the Defendants are liable for $59,690.57 in liquidated damages in addition to the $59,690.57 in back wages.

## I.      Injunctive relief is warranted.

Finally, the Secretary seeks to enjoin Defendants from future violations. FLSA § 17 places the question whether an injunction should issue within the court's discretion.[67] In exercising this discretion, a court should consider the previous conduct of the employer, the current conduct of the employer, and the dependability of the employer's promises for future compliance.[68]

I find that an injunction is appropriate in this case. As previously discussed, Defendants' violations were willful, and they continued even after having been investigated by the Wage and Hour division. Some of Defendants' violations, such as paying overtime in cash and switching between salary and hourly compensation to avoid paying overtime, suggest intentional evasion of the FLSA's mandates. An injunction is therefore necessary to protect employees against potential future misconduct by Defendants, and I grant summary judgment on this question.

---

[67] *See* 29 U.S.C. § 217; *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 288 (D.N.J. 1989).
[68] *See Central Laundry*, 2019 WL 3413514 at *15.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment

(Doc. 33) is **GRANTED**.

An appropriate Order follows.


                                     BY THE COURT:


                                     _s/ Matthew W. Brann_
                                     Matthew W. Brann
                                     United States District Judge